**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Trudel et al., | No. CV-12-1208-PHX-SMM |
| Plaintiffs, | |
| v. | **MEMORANDUM OF DECISION AND ORDER** |
| American Family Mut. Ins. Co., | |
| Defendant. | |

Before the Court is Defendant American Family Mutual Insurance Company's ("American Family") fully briefed Motion for Partial Summary Judgement. (Docs. 57; 71; 75.) For the reasons that follow, the motion is denied.[1]

## BACKGROUND

Since 1995, Plaintiffs Michael Trudel's and Sandra Staples-Trudel's (the "Trudels")[2] home in Scottsdale, Arizona has been insured by homeowners' insurance policies issued by American Family. (Docs. 66 ¶ 1; 72 ¶ 3.) On October 5, 2010, several homes including the Trudels' were damaged by a hail storm that moved through the Phoenix metropolitan area.

---

[1] The request for oral argument is denied because there was adequate opportunity to present written argument, and oral argument will not aid the Court's decision. Fed. R. Civ. P. 78(b); LRCiv 7.2(f); Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998).

[2] While the Court would not ordinarily disregard Mrs. Staples-Trudel's hyphenated surname, the Court adopts the parties' convention of referring to both Plaintiffs as the "Trudels" for the sake of consistency.

1  (Docs. 66 ¶ 5; 72 ¶ 7.) On November 8, 2010, the Trudels filed a notice of loss for damage
2  to their home. (Docs. 66 ¶ 5; 72 ¶¶ 8-9)

3   American Family hired an independent adjusting firm, Pacesetters, to assist with
4  Trudels' claim; the Pacesetters' adjuster Randel Green ("Green") inspected the Trudels'
5  home and found hail damage to two roof tiles, the skylight, a gutter, the garage door, window
6  screens, the air conditioning unit, and a plastic dog crate. (Doc. 66 ¶¶ 6-7). Although Green
7  was a licensed adjuster in other states, he was not licensed in Arizona. (Doc. 72 ¶ 12.) At the
8  time, Green was adjusting 30 to 40 homes a week and was compensated according to the
9  number of homes he adjusted. (Id. ¶ 14.) Green would only conclude a roof tile was damaged
10 by hail if he could observe an impact mark. (Id. ¶ 22.) Since Green was unwilling to actually
11 climb on the roof because it was so fragile (id. ¶ 17),[3] he only concluded a roof tile was
12 damaged if he could see an impact mark from his vantage point at the edge of the roof (id.
13 ¶¶ 22-23). American Family disputes this fact on the basis that Green's deposition testimony
14 "makes no mention of the adjusters [*sic*] 'vantage point at the edge of the roof' " (Doc. 76
15 at 2), but a finder of fact could reasonably conclude as much given the fact that Green did
16 not actually get on the roof. The Trudels did not have any questions and did not feel like
17 there was any damage that Green's estimate did not address (Doc. 66 ¶¶ 11-12), but the
18 estimate did not include damage to the stucco exterior of the Trudels' home nor did it
19 account for the number of tiles that may be broken during repair. (Docs. 58-1 at 41-48; 72
20 ¶¶ 19-21; 76 at 2.) Less deductible and depreciation, the Trudels received $712.35. (Docs.
21 66 ¶¶ 8-10; 72 ¶ 18.)

22  The Trudels subsequently asked a local contractor for a repair estimate. (Docs. 72 ¶
23 24; 76 at 2.) The local contractor identified several additional damaged tiles, noted that the
24 particular type of tile was no longer manufactured, and suggested the entire roof needed to
25 be replaced. (Doc. 72 ¶ 25.) While American Family argues this estimate is inadmissible

---

[3] The Court notes that the cited evidence does not support this assertion, but accepts it as true because it is undisputed.

- 2 -

hearsay, the contents of the report could be admitted at trial for a purpose other than the truth of the matters asserted therein, such as why the Trudels called and asked for the claim to be reopened, which they did. (Doc. 66 ¶ 14.) In turn, American Family reviewed the local contractor's estimate and sent a second adjuster, also from Pacesetters, to reinspect the Trudels' home; however, no additional damage was found and American Family denied additional coverage or payment consideration on the loss. (Id. ¶¶ 14-17.)

The Trudels subsequently requested a copy of their claim, retained counsel, and filed suit in Maricopa County Superior Court alleging breach of contract and insurance bad faith. (Docs. 1-1 at 5-7; 66 ¶¶ 18, 20-21.) American Family removed on the basis of diversity. (Doc. 1.) During discovery, the Trudels disclosed repair estimates for their tile roof, flat roof, and pool area (Doc. 66 ¶ 22), and claimed that the entire roof needed to be replaced because their particular type of roof tile was no longer manufactured and their homeowners' association would not allow the use of non-matching tile (Doc. 72 ¶ 26).[4] The repair estimates ranged from $36,890.44 and $106,199.36. (Doc. 66 ¶ 26.) Notably, the lowest repair estimate is more than $30,000 greater than the amount of ACV payments, and American Family does not contend it has paid everything due, but concedes that "[t]he amount American Family owes to plaintiffs on the claim" is a live issue. (Id. at 1.)

American Family retained Haag Engineering ("Haag") to assess the damage to the Trudels' home; Haag disagreed that the pool damage was due to the storm. (Doc. 66 ¶ 23.) Haag also noted that the Trudels' estimates called for complete roof replacement and disagreed that such extensive repairs were necessary. (Id. ¶¶ 24-25.) Even so, Haag found hail damage to the Trudels' home for which they were not compensated. (Docs. 72 ¶ 38; 76 at 4.) More than a year after receiving Haag's report, American Family paid an additional $3,660.34 in undisputed damages to the Trudels' home. (Docs. 72 ¶ 39; 72-9 at 5.) After discovery, American Family moved for summary judgment. (Doc. 57.)

---

[4] Whether the Trudels' homeowners' association would not allow the use of non-matching tile is disputed, but there is sufficient evidence in the record to infer as much. (Doc. 72-1 ¶ 17.)

The policy terms that were in effect during the relevant time period (the "Policy") are the subject of dispute. According to American Family, "Arizona Amendatory Homeowners Endorsement 584(C)" amended the Policy to state:

> **Loss Payment.** We will adjust all losses with you. We will pay you unless some other party is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your properly completed proof of loss and:
> a. We reach agreement with you;
> b. There is an entry of a final judgment; or
> c. There is a filing of an appraisal award with us.
>
> ***
>
> **Matching of Undamaged Property.** We will not pay to repair or replace undamaged property due to mismatch between undamaged and new material used to repair or replace damaged material because of:
> a. Texture, dimensional difference;
> b. Color, fading, oxidation, weathering differences;
> c. Wear and tear, marring, scratching, deterioration; or
> d. Obsolescence or discontinuation.
>
> We do not cover the loss in value to any property due to mismatch between undamaged material and new material used to repair or replace damaged material.

(Docs. 58-1 at 8; 58 ¶¶ 3-4; 66 ¶¶ 3-4). Endorsement 584(C) modified the Loss Payment provision by substituting arbitration with appraisal[5] and by adding the Matching of Undamaged Property exclusion. (Compare Doc. 58-1 at 8, with Doc. 58-1 at 22.) The Trudels claim they never received Endorsement 584(C) and only became aware of the amendment after it was raised in the litigation. (Doc. 72 ¶¶ 63-64.) This fact is undisputed.

The Policy also included a "Procedures to Claim Replacement Coverage" provision that, pursuant to "Gold Star Homeowners Amendatory Endorsement 587," stated that if the insured "received an actual cash value settlement for damaged property covered by replacement coverage . . . [the insured] may make a further claim under this condition for

---

[5] Pursuant to Endorsement 584(C), where the insured and insurer "fail to agree on the amount of loss, either may demand an appraisal of the loss." (Doc. 58-1 at 7.) This provision supplanted the original arbitration provision, which provided that if the insured and insurer "cannot agree as to the amount of liability, the controversy may be settled by arbitration" and that either "may make this demand." (Id. at 21.) Both before and after Endorsement 584(C), the insurer was free to request appraisal/ arbitration without waiving its rights. (Id. at 8, 28.)

1  replacement cost, provided repairs to the damaged portion or replacement of the damaged
2  building are completed within one year of the date of loss."[6] (Doc. 58-1 at 10.) Endorsement
3  587 is not the subject of dispute and the original provision was more or less the same.
4  (Compare Doc. 58-1 at 10, with Doc. 58-1 at 22-23.)

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

To prove the absence of a genuine dispute, the movant must demonstrate that "the evidence is such that [no] reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Securities Litig., 627 F.3d 376, 388 (9th Cir. 2010). If the moving party carries that burden, then the non-moving party must designate specific evidence capable of supporting a favorable verdict. Id. In determining whether either or both of these burdens have been carried, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Anderson, 477 U.S. at 254. An inference is justifiable if it is rational or reasonable. Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010).

---

[6] American Family's citation to a 30 page exhibit for a single sentence falls short of its obligation to cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c); accord LRCiv 56.1(a) (emphasis added) ("Each material fact . . . must refer to a *specific* admissible portion of the record where the fact finds support.").

**ANALYSIS**

American Family claims it is entitled to judgment as a matter of law on the Trudels' claims for breach of contract and insurance bad faith and on the issue of punitive damages.

**I.  Breach of Contract**

A prima facie breach of contract claim requires the plaintiff to make three showings: (1) the existence of a contract; (2) breach; and (3) resultant damages. Thomas v. Montelucia Villas, LLC, 232 Ariz. 92, 96, 302 P.3d 617, 621 (2013). It is undisputed that a contract exists between the Trudels and American Family. It is also undisputed that American Family owes the Trudels money pursuant to that contract. Thus, the dispositive issue for the Trudels' breach of contract claim is the element of breach. American Family attacks breach on two fronts: the non-occurrence of conditions precedent and the exclusion for replacing undamaged property.

*Conditions Precedent*[7]

Typically, breach is "a failure, without legal excuse, to perform any promise which forms the whole or part of a contract." Snow v. W. Sav. & Loan Ass'n, 152 Ariz. 27, 32, 730 P.2d 204, 210 (1986) (quoting 11 Williston on Contracts § 1290, at 2 (3d ed. 1968)). Breach for failure to perform cannot occur until performance is due, Restatement (Second) of Contracts § 235(2) & cmt. b (1981), and performance "subject to a condition cannot become due unless the condition occurs," id. § 225(1). See Yeazell v. Copins, 98 Ariz. 109, 114, 402 P.2d 541, 544 (1965). "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." AROK Constr. Co. v. Indian Constr. Servs., 174 Ariz. 291, 296 n.4, 848 P.2d 870, 875 n.4 (App. 1993) (quoting Restatement (Second) of Contracts § 224).

"Whether the parties have, by their agreement, made an event a condition is determined by the process of interpretation." Restatement (Second) of Contracts § 226 cmt.

---

[7] Since neither party briefs any law regarding breach, the Court decides the issue based on its own determination of controlling law. See McKown v. Simon Prop. Grp. Inc., 689 F.3d 1086, 1091 (9th Cir. 2012).

- 6 -

a. " 'The primary and ultimate purpose of interpretation' is to discover [the parties'] intent and to make it effective." Taylor v. State Farm Mut. Auto. Ins. Co., 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993) (quoting 3 Corbin on Contracts § 572B, at 421 (1992 Supp.)). "In ascertaining the parties' intent, the court will look to the plain meaning of the words as viewed in the context of the contract as a whole." United Cal. Bank v. Prudential Ins. Co. of Am., 140 Ariz. 238, 259, 681 P.2d 390, 411 (App. 1983). "In view of the general understanding that only the insurer undertakes duties" in an insurance policy, "a term requiring an act to be done by the insured" will ordinarily "be interpreted as making that event a condition of the insurer's duty rather than as imposing a duty on the insured." Restatement (Second) Contracts § 227 cmt. d.

American Family argues that it could not have breached the Policy because the conditions to its duty to pay had not occurred. (Doc. 57 at 7.) According to American Family, the conditions precedent are the "Loss Payment" and/or the "Procedures to Claim Replacement Coverage" provisions (respectively the "settlement" and "supplemental payment" provisions/conditions). Since the Trudels did not satisfy the settlement and supplemental payment conditions, American Family concludes that the Trudels "cannot bring a breach of contract claim on the basis that an actual cash value (ACV) payment was too low when they never invoked the policy provisions designed to address inadequate ACV payments." (Doc. 75 at 3.)

However, Arizona courts disfavor "construing conditional provisions in a contract" as conditions precedent, Angle v. Marco Builders, Inc., 128 Ariz. 396, 399, 626 P.2d 126, 129 (1981), and will not do so "unless such construction is plainly and unambiguously required by the language of the contract," Realty Assocs. of Sedona v. Valley Nat'l Bank of Ariz., 153 Ariz. 514, 519, 738 P.2d 1121, 1127 (App. 1986) (quoting Watson Constr. Co. v. Reppel Steel & Supply, 123 Ariz. 138, 140, 598 P.2d 116, 118 (App. 1979)). American Family contends the settlement provision "clearly and unambiguously states that there is no obligation to pay unless there is an agreement, entry of a final judgment, or filing of an appraisal award." (Doc. 75 at 4.) The Court has some doubt about whether the phrases used

by the settlement provision unmistakably communicate that American Family has no duty to pay unless and until there is agreement, final judgment, or an appraisal/arbitration award. The Court has even more doubt about whether the parties intended for the Trudels to incur, at minimum, $30,000 in repair costs before being eligible for supplemental payment.

Even if the provisions are conditions, American Family "is not relieved of its contractual liability because of" the non-occurrence of conditions precedent "unless it can show that it has been prejudiced thereby." Lindus v. N. Ins. Co. of N.Y., 103 Ariz. 160, 164, 438 P.2d 311, 315 (1968) (ruling in context of notice condition precedent); see Zuckerman v. Transamerica Ins. Co., 133 Ariz. 139, 143-46, 650 P.2d 441, 445-48 (1982) (extending Lindus to "condition[s] limiting the time for instituting legal action"); Globe Indem. Co. v. Blomfield, 115 Ariz. 5, 7, 562 P.2d 1372, 1374 (1977) ("An insurer cannot withdraw coverage on the ground that a condition such as notice has not been met unless the insurer can show that it was prejudiced by the act of the insured."); see also Zuckerman, 133 Ariz. at 143 n.6, 650 P.2d at 445 n.6 (noting insured's failure to comply with "cooperation clause" does "not result in the forfeiture of rights arising thereunder unless the insurer establishes prejudice"). The burden of proving prejudice falls on American Family, but it has not alleged any facts to suggest that the non-occurrence of the appraisal condition resulted in prejudice. In fact, American Family could have demanded appraisal itself but declined to do so.

As an aside, the Trudels complaint alleged "American Family waived its contractual rights under the Policy" (Doc. 1-1 at 7), but that the argument is not raised in their responsive memorandum. The Court pauses to note only that the Trudels' assertion that they did not agree because they, as lay persons, were incapable of assessing the measure of damage to their home (Doc. 66 ¶ 11) is enough to allow a reasonable jury to find that the parties did not "concur in opinion" about the measure of loss. Black's Law Dictionary 81 (10th ed. 2014) (defining "agree"). There is thus reason to believe that American Family's partial performance—despite the non-occurrence of any of the three putative settlement conditions—was "inconsistent with an intent to assert [its] right[s]" under the Policy, Am. Cont'l Life Ins. Co. v. Ranier Constr. Co., Inc., 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980).

Next, Arizona courts treat American Family's argument—that non-occurrence of conditions precedent precludes an action for breach—as an affirmative defense. See Porter v. Empire Fire & Marine Ins. Co., 106 Ariz. 274, 280, 475 P.2d 258, 264 (1970) (characterizing as an affirmative defense insurer's argument that insured's recovery was precluded by non-occurrence of condition); Supreme Lodge of Fraternal Bhd. v. Grijalva, 28 Ariz. 77, 79, 235 P. 397, 398 (1925) (same). But the only affirmative defense American Family raised in its Answer was failure to state a claim. (Doc. 1-2 at 16.) As a result, American Family waived the argument that it now makes. See Fed. R. Civ. P. 8(c). However, the Court may allow a party to argue an improperly raised affirmative defense in the absence of prejudice to the opposing party. Simmons v. Navajo County, 609 F.3d 1011, 1023 (9th Cir. 2010). The parties did not brief whether American Family waived the argument that it now relies upon and the Trudels do not argue that the argument is prejudicial. In fact, the Trudels response to the argument is meager: they argue only that acceptance of "American Family's argument would be to accept the idea that no insured could ever bring a lawsuit for breach of contact against their insurance company when that company fails to pay benefits due under an insurance contract." (Doc. 71 at 8.) As American Family correctly points out, the Trudels "ignore[] the agreement and filing of appraisal" provisions. (Doc. 75 at 4.) The Trudels' response also completely ignores the supplemental payment provision. For purposes of deciding summary judgment, the Court assumes that the Trudels are not prejudiced by the untimely conditions precedent argument. See Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am., 679 F.2d 803, 804 (9th Cir. 1982) (per curiam); cf. Fed. R. Civ. P. 15(a)(2).

Even if the settlement and supplemental payment provisions are conditions—the non-occurrence of which prejudiced American Family—and assuming both that American Family had not waived its rights under the contract and that it was permitted to raise its non-occurrence of conditions argument, there is yet another obstacle to summary judgment. The Trudels' complaint alleged American Family committed anticipatory repudiation by unconditionally denying part of their claim, thereby relieving the Trudels of "any corresponding obligations." (Doc. 1-1 at 7.) Anticipatory repudiation is "a species of contract

1 breach in which the offending party states 'that [it] will not render the promised performance
2 when the time fixed for it in the contract arrives.' " United Cal. Bank, 140 Ariz. at 279-80,
3 681 P.2d at 431-32 (quoting Diamos v. Hirsch, 91 Ariz. 304, 307, 372 P.2d 76, 78 (1962)).
4 The non-breaching party bears the burden of proving anticipatory repudiation, which requires
5 proof that the repudiating party positively and unequivocally manifested that it would not
6 render promised performance when it was due. Diamos, 91 Ariz. at 307-08, 372 P.2d at 79;
7 United Cal. Bank, 140 Ariz. at 277, 681 P.2d at 429. If that burden is carried, then the non-
8 breaching party not only has a claim for damages,[8] but is also excused from tendering
9 performance to the breaching party. Thomas, 232 Ariz. at 95, 302 P.3d at 620. Likewise, if
10 a party's "repudiation contributes materially to the non-occurrence of a condition of one of
11 [its] duties, the non-occurrence is excused." Restatement (Second) of Contracts § 255.

12 Although there is no briefing about anticipatory repudiation, the Trudels assert facts
13 consistent with the doctrine. Specifically, the Trudels allege that American Family committed
14 breach by refusing to include in the ACV payments the costs of (1) general contractor
15 overhead and profit ("GCOP"); and (2) replacing undamaged material. (Doc. 71 at 8-11.) As
16 to the replacement of undamaged material, it is undisputed that the Trudels were unaware of
17 the exclusion until after they filed this action. (Doc. 72 ¶¶ 63-64.) It is therefore
18 chronologically impossible for American Family's refusal to pay for matching undamaged
19 property to have been the impetus for the Trudels' suit and could not have materially
20 contributed to the non-occurrence of either of the putative conditions. As explained below,
21 such refusal may, however, amount to non-performance of a contractual duty.

22 As to GCOP, American Family argues that its refusal to include GCOP payments was
23 based on a reasonable interpretation of the Policy. However, "anticipatory repudiation may
24 be based upon an erroneous contract interpretation just as it may be based upon a refusal to

---

[8] Recovery of those damages, however, requires the non-breaching party to also "show 'that [it] would have been ready and willing to have performed the contract, if the repudiation had not occurred.' " Thomas, 232 Ariz. at 95, 302 P.3d at 620 (quoting United Cal. Bank, 140 Ariz. at 288-89, 681 P.2d at 440-41).

perform for any other reason." United Cal. Bank, 140 Ariz. at 278, 681 P.2d at 430. Therefore, if American Family unequivocally refused to include GCOP in ACV payments based on an erroneous interpretation of the Policy, American Family committed anticipatory breach. See id. The Policy itself is silent on the matter.

"In attempting to discern the meaning of the policy, [Arizona courts] also look to the purpose of the transaction and public policy considerations." Tritschler v. Allstate Insurance Co., 213 Ariz. 505, 515, 144 P.3d 519, 529 (App. 2006). Noting that "in buying insurance an insured . . . seeks protection and security from economic catastrophe," id. (alteration omitted) (quoting Rawlings v. Apodaca, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986)), the court in Tritschler found "the purpose of the transaction was to fully reimburse [the insured] for covered losses, to the extent of the coverage provided by the policy," id. Since "[r]equiring payment of overhead and profit likely to be incurred if the damage is repaired furthers that purpose," Tritschler concluded GCOP should have been included in ACV. Id.

American Family emphasizes that the policy in Tritschler defined ACV while the Trudels' Policy does not. At most, this establishes that the Policy is silent about whether GCOP should be included in ACV payments. However, the holding in Tritschler considered not only the definition of ACV, but also the purpose of the transaction and public policies. Id. Considering that the Policy is silent about the inclusion or exclusion of GCOP from ACV payments, that the purpose of the transaction was to provide the Trudels with "protection and security from economic catastrophe," Rawlings, 151 Ariz. at 154, 726 P.2d at 570, and Arizona's long held public policy "that, in buying insurance, consumers are entitled to get what they pay for," State Farm Mut. Auto. Ins. Co. v. Wilson, 162 Ariz. 251, 256, 782 P.2d 727, 732 (1989), the Court finds that if "the cost to repair or replace the damaged property would likely require the services of a general contractor, the contractor's overhead and profit fees should be included in determining actual cash value." Tritschler, 213 Ariz. at 515, 144 P.3d at 529. Consequently, if the services of a general contractor would be required to make the necessary repairs on the Trudels' home and American Family unequivocally refused to pay GCOP, it repudiated a contractual duty. If such a repudiation materially contributed to

1  the non-occurrence of a provision upon which American Family's duty was conditioned, then
2  the non-occurrence of that condition is excused.

3       Finally, American Family's position in this case relies on a similar case from this
4  District that dealt with analogous settlement and supplemental payment provisions, which
5  is unsurprising as American Family was the insurer in that case as well. <u>Bond v. Am. Family</u>
6  <u>Mut. Ins.</u>, No. CV–06–1249–PHX–DGC, 2008 WL 477873 (D. Ariz. Feb. 19, 2008) (cited
7  with approval by <u>Echanove v. Allstate Ins. Co.</u>, 752 F. Supp. 2d 1105, 1108-09 (D. Ariz.
8  2010)).  However, the insureds in <u>Bond</u>, unlike the Trudels, did not allege that American
9  Family waived any of its contractual rights, <u>see</u> Complaint, <u>Bond</u>, ECF No. 1-1, at 2-6, and
10 American Family raised the affirmative defense of breach in <u>Bond</u>, Answer, <u>Bond</u>, ECF No.
11 2, but not in this case. Moreover, while the insureds in <u>Bond</u> and the Trudels both failed to
12 avail themselves of the settlement and supplemental payment provisions, <u>see</u> 2008 WL
13 477873, at *3, the factual similarity ends there. Unlike the insureds in <u>Bond</u> who completed
14 their home repairs after receiving ACV payments, the Trudels' repairs are not only
15 unfinished, but have yet to begin. The principal reason for the delay is that, unlike the
16 insureds in <u>Bond</u> whose repair costs did not exceed the amount of ACV payments, <u>id.</u> at *2,
17 it is undisputed that the actual cost of repairing the Trudels' home exceeds the amount of
18 ACV payments they received (Doc. 57 at 1.) The court in <u>Bond</u> was concerned that the
19 insureds were "gam[ing] the system by accepting an [ACV] payment, repairing the property
20 for less than the payment, and then seeking to recover more money by challenging the
21 reasonableness of the [ACV] payment," <u>Bond</u>, 2008 WL 477873, at *3, but that concern is
22 absent here, especially considering the difference between ACV payments and the range of
23 estimated repair costs. Hence, <u>Bond</u> is readily distinguished from the present case.

24       Notably, the court in <u>Bond</u>, although construing a policy that defined ACV, also
25 denied American Family summary judgment on breach as to GCOP reasoning that the
26 "[d]efendant should have included [GCOP] in its [ACV] payments" because the policy did
27 "not exclude contractor overhead and profit from the universe of expenses that may
28 constitute part of [ACV]" and the plaintiffs would likely "be required to pay for a general

1 contractor's services." 2008 WL 477873, at *4. Likewise, the Trudels' Policy does not
2 exclude GCOP from the universe of ACV. In this regard, Bond suggests American Family's
3 failure to include such costs was a failure to perform a contractual promise, provided that the
4 services of a general contractor were required to repair the Trudels' home.

*Exclusion for Replacing Undamaged Property*

American Family argues that its refusal to pay for replacing undamaged property cannot constitute breach given the exclusion therefor in Endorsement 584(C). The Trudels respond that the exclusion is unenforceable because they never received it and, alternatively, that it violates their reasonable expectations. As to the former argument, American Family does not dispute that the Trudels were not aware of Endorsement 584(C) until after the instant action had been filed. Insurance policies, like other contracts, cannot be unilaterally modified by one party; rather, modification requires the trinity of offer, acceptance, and consideration. Demasse v. ITT Corp., 194 Ariz. 500, 506, 984 P.2d 1138, 1144 (1999) (ruling in context of implied-in-fact term in employment contract). An offer cannot be accepted unless the offeree knows that the offer exists. As there is evidence from which a jury could reasonably conclude that the Trudels did not know Endorsement 584(C) existed (Doc. 72 ¶¶ 63-64), the applicability of Endorsement 584(C) presents a question for the jury.

Contrary to American Family's belief, the rule of reasonable expectations is not a different theory of relief, but is an interpretive doctrine in which "a contract term is not enforced if one party has reason to believe that the other would not have assented to the contract if it had known of that term." Action Acquisitions, LLC, 218 Ariz. at 400, 187 P.3d at 1113. "One of the basic principles which underlies [the doctrine] is simply that the language in the portion of the instrument that the customer is not ordinarily expected to read or understand ought not to be allowed to contradict the bargain made by the parties." Averett v. Farmers Ins. Co., 177 Ariz. 531, 533, 869 P.2d 505, 507 (1994). As the Trudels would bear the burden of proving that the doctrine applied at trial, State Farm Fire & Cas. In. Co. v. Grabowski, 214 Ariz. 188, 190, 150 P.3d 275, 277 (App. 2007), American Family bears the burden of proving at summary judgment the absence of evidence supporting the doctrine.

1    American Family's summary judgment motion fails to establish the absence of a
2 genuine dispute regarding whether the Trudels would have purchased the Policy if they had
3 known of the exclusion for replacing undamaged property, nor does American Family
4 foreclose on the possibility that it had reason to believe the Trudels would have assented to
5 the exclusion if they had known of its presence. Therefore, even assuming the Trudels
6 received and assented to Endorsement 584(C), it is for the jury to decide whether the
7 exclusion for matching property falls within one of the four limited categories of
8 circumstances in which Arizona courts will not enforce unambiguous insurance terms. See
9 Philadelphia Indem. Ins. Co. v. Barerra, 200 Ariz. 9, 13-17, 21 P.3d 395, 399-403 (2001).

*Summary*

Even if the settlement and/or supplemental payment provisions are conditions, American Family failed to show it was prejudiced by the non-occurrence thereof. Moreover, even if non-occurrence was prejudicial, American Family and cannot show the absence of evidence from which a jury could reasonably conclude that it was breached the Policy. Therefore, American Family is not entitled to summary judgment on breach.

**II.    Bad Faith and Punitive Damages**

*Bad Faith*

"[A]n insurance company's duty of good faith [means] an insurer must deal *fairly* with an insured, giving equal consideration *in all matters* to the insured's interests." Rawlings, 151 Ariz. at 157, 726 P.2d at 573 (quoting Tank v. State Farm Fire & Cas. Co., 715 P.2d 1133, 1136 (Wash. 1986)). "An insurer acts in bad faith when it unreasonably investigates, evaluates, or processes a claim (an 'objective' test), and either knows it is acting unreasonably or acts with such reckless disregard that such knowledge may be imputed to it (a 'subjective' test)." Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co., 230 Ariz. 592, 597-98, 277 P.3d 789, 794-95 (App. 2012); accord Miel v. State Farm Mut. Auto. Ins. Co., 185 Ariz. 104, 110, 912 P.2d 1333, 1339 (App. 1995). "Negligent conduct which results solely from honest mistake, oversight, or carelessness does not necessarily create bad faith liability even though it may be objectively unreasonable." Trus Joist Corp. v. Safeco Ins. Co. of Am., 153

Ariz. 95, 104, 735 P.2d 125, 134 (App. 1986). Thus, an insurer can defend against the second prong of bad faith on the basis it was not "conscious" that its conduct was unreasonable because the insured's claim was "fairly debatable." Id. The issue should go to the jury where there is "sufficient evidence . . . from which a jury could find that [the insurer] acted unreasonably and knew it." Zilisch v. State Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 238, 995 P.2d 276, 280 (2000). "Where coverage is not contested but the amount of the loss is disputed, the insurer is under a duty to pay any undisputed portion of the claim promptly. Failure to do so amounts to bad faith." Voland v. Farmers Ins. Co. of Ariz., 189 Ariz. 448, 452, 943 P.2d 808, 812 (App. 1997) (quoting Borland v. Safeco Ins. Co. of Am., 147 Ariz. 195, 200, 709 P.2d 552, 557 (App. 1985)); accord Filasky v. Preferred Risk Mut. Ins. Co., 152 Ariz. 591, 597, 734 P.2d 76, 82 (App. 1987).

American Family argues not that its conduct was objectively reasonable under the first prong, but that the amount it owes the Trudels was "fairly debatable" under the second prong because the repair estimates varied so widely. (Doc. 66 ¶ 26.) "[W]hile fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition," Zilisch, 196 Ariz. at 238, 995 P.2d at 280, and the insurer's "belief in fair debatability 'is a question of fact to be determined by the jury,' " id. at 237, 995 P.2d at 279 (quoting Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 539, 647 P.2d 1127, 1137 (1982)). Thus, even assuming that American Family had proven the Trudels' claim was "fairly debatable," summary judgment on bad faith is inappropriate because American Family failed to prove the absence of genuine dispute as to its belief in fair debatability.

While Voland declined to extend Borland, which considered stolen property, and Filasky, which considered lost wages, to claims that are "unique and generally not divisible or susceptible to relatively precise evaluation or calculation," Voland, 189 Ariz. at 452, 943 P.2d at 812, the damage to the Trudels' home was "susceptible to relatively precise evaluation or calculation." Indeed, the nature of the appraisal condition evidences the susceptibility of property damage to meaningful measurement. American Family claims to have paid the Trudels the undisputed amounts by its own estimates and asserts that the

Trudels failed to present evidence that the cost of repairs exceeded ACV payments, but American Family does not claim that it has paid the Trudels everything to which they are entitled under the Policy. Rather, American Family acknowledges that even if the Court granted its summary judgment motion, "[t]he amount American Family owes to plaintiffs on the claim would remain at issue." (Doc. 57 at 1.) This acknowledgment is by itself enough to permit the inference that American Family consciously—as opposed to negligently— disregarded the absence of a reasonable basis for its conduct. Cf. Trus Joist Corp., 153 Ariz. at 102, 735 P.2d at 132 (finding reasonableness of withholding benefits in a contested coverage personal injury action presented question for the jury); Filasky, 152 Ariz. at 597, 734 P.2d at 82; Borland, 147 Ariz. at 200, 709 P.2d at 557.

The Trudels designate additional evidence from which a jury could reasonably conclude that American Family did not believe the Trudels' claim was fairly debatable. For example, that American Family knew the investigation performed by Pacesetters was inadequate because the training American Family provides to vendor adjustors like those from Pacesetters does not teach recognition of hail damage nor does it focus on tile roofs (Doc. 72 ¶¶ 15-16); that American Family inexplicably waited more than a year to make the second undisputed ACV payment (id. ¶¶ 39-40); that American Family knew the ACV payments were inadequate because it excluded GCOP even though refusal to pay GCOP violated American Family's best practices, which is tantamount to breaching the Policy (id. ¶¶ 48-51); and that American Family acknowledged "matching considerations" before reversing its position and relying on the exclusion for denying payment for matching undamaged property (id. ¶ 30).

The Court finds there is sufficient evidence from which a jury could reasonably find that American Family acted unreasonably and knew it.

*Punitive Damages*

Recovery of punitive damages requires clear and convincing evidence that the insurer engaged in "aggravated and outrageous conduct" with an "evil mind." Linthicum v. Nationwide Life Ins. Co., 150 Ariz. 326, 332, 723 P.2d 675, 681 (1986); see State v. King,

1  158 Ariz. 419, 422 763 P.2d 239, 242 (1988) (approving of "highly probable" as the clear
2  and convincing burden of proof). An "evil mind" can be established by evidence from which
3  a jury can reasonably infer that the insurer intended to injure plaintiff, or that the insurer
4  deliberately "pursued a course of conduct knowing that it created a substantial risk of
5  significant" injury to plaintiff. Rawlings, 151 Ariz. at 162, 726 P.2d at 578. Whether conduct
6  involves an element of outrage is a flexible fact-specific inquiry, but some generally
7  intolerable categories of conduct include fraud, " 'deliberate, overt and dishonest dealings,'
8  'oppressive conduct' and 'insult and personal abuse.' " Id. at 163, 726 P.2d at 579 (quoting
9  Farr v. Transamerica Occidental Life Ins. Co., 145 Ariz. 1, 8-9, 699 P.2d 376, 383-84 (App.
10 1984)). Summary judgment on punitive damages must be denied if "there is a reasonable
11 view of the evidence that will support punitive damages." Thompson v. Better-Bilt
12 Aluminum Prods. Co., Inc., 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992) (quoting Borland,
13 147 Ariz. at 200, 709 P.2d at 557).

American Family asserts that "no reasonable jury could find American Family's conduct was aggravated, outrageous, malicious, or fraudulent" because its investigation, evaluation, and coverage decisions were not groundless. (Doc. 57 at 13.) The Trudels respond that the laundry list of conduct that precludes summary judgment on bad faith permits the inference that American Family's conduct "evinced a conscious disregard of a substantial risk of harm[ing]" the Trudels. (Doc. 71 at 16.) The Trudels also designate evidence in the record that American Family engages in oppressive conduct such as "putting pressure on the customer with . . . penalties for not accepting the offer" (Doc. 72-11 at 2); for example, threatening an insured whose vehicle had been towed and was being stored with having to pay storage fees if he or she did not accept a settlement offer (Doc. 72-12 at 2). Other evidence explains "the power of the checkbook" leverages the insured's knowledge that the adjuster "control[s] the amount of money that he or she will receive and when he or she gets it," and emphasizes such power "is a very strong bargaining tool." (Doc. 72-13 at 2.) The documents purport on their face to be from American Family's "Education Division" and were recognized as such by American Family's corporate deponents. (Docs. 72-3 at 13;

72-4 at 16-17; 72-11 at 2; 72-12 at 2; 72-13 at 2.)

While American Family disputes this evidence as irrelevant because an "American Family employee testified in a deposition that [this] document[] [is] not used to train vendor adjustors like the two who handled plaintiffs' claim" (Doc. 76 at 5), the deponent testified that the training program "is designed to familiarize adjusters with the American Family way of doing business," (Doc. 72-3 at 12). American Family also argues that the documents are irrelevant because there is no evidence that the "pressure close" or "power of the checkbook" tactics were used on the Trudels. However, given the length of delay in supplemental payment and the difference in ACV payments from the minimum estimate of repair cost, the documents have some tendency to affect the likelihood that American Family disregarded an unjustifiable risk of significant injury to the Trudels. The documents are therefore relevant. See Fed. R. Evid. 401. The degree to which the documents represent American Family's "way of doing business" goes to their weight, not their admissibility. Since the documents would be admissible at trial, the Court may consider them. See Fed. R. Civ. P. 56(c)(2); Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006).

In light of the foregoing, the Court finds that the question of punitive damages is not susceptible of summary judgment because the evidence is such that a jury could reasonably find it "highly probable" that American Family "was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would" befall the Trudels. Rawlings, 151 Ariz. at 162, 726 P.2d at 578 (quoting Ariz. Rev. Stat. § 13-105(5)(c)).

Accordingly,

**IT IS HEREBY ORDERED denying** Defendant's Motion for Partial Summary Judgement. (Doc. 57.)

**IT IS FURTHER ORDERED** that the Final Pretrial Conference will be set in a subsequent order.

DATED this 15th day of August, 2014.

_____
Stephen M. McNamee
Senior United States District Judge